## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

MATTHEW ALLEN,
    *Plaintiff*,

v.
                                  No. 3:20-cv-1276 (JAM)

RAFIK SIDAROS *et al.*,
    *Defendants*.

### ORDER GRANTING MOTION TO DISMISS

Plaintiff Matthew Allen has filed an amended complaint against the defendants Dr. Rafik Sidaros, Dr. Victoria Dreisbach, and the State of Connecticut alleging violations of his Fourth and Eighth Amendment rights arising from his involuntary commitment and mental health treatment at two state hospitals. I have previously granted a motion to dismiss Allen's original complaint, and the defendants have filed a renewed motion to dismiss. Because Allen's amended complaint does not overcome the deficiencies identified in my earlier ruling dismissing his original complaint, I will grant the motion.

### BACKGROUND

Allen was arrested in June 2017 for breach of peace and interfering with an officer, both misdemeanors.[1] When he appeared before the court to refuse a plea bargain, the presiding judge ordered that he undergo a psychological evaluation.[2] Dr. Rocksheng Zhong conducted Allen's evaluation on August 16, 2017.[3] Dr. Zhong advised the court that Allen was not competent to stand trial and suggested a stay of approximately 60 days at Whiting Forensic Hospital.[4]

---

[1] Doc. #33 at 10.
[2] *Id.* at 11.
[3] *Ibid*.
[4] *Ibid*.

Allen was committed to Whiting in September 2017.[5] While at Whiting, his care was managed by Dr. Sidaros.[6] The conditions at Whiting were "appalling," with "poor quality food," "dirty dingy surroundings" and "constant acts of violence between the patients."[7] When Allen first arrived at Whiting, he requested to take "Depakote medication for his mood issues," which was "the only medication that had been effective for him in the past."[8] Dr. Sidaros, however, told Allen that he needed to either take both Depakote and an antipsychotic or no medication at all.[9] Allen chose the latter.[10] Allen was also "forced into solitary confinement" where he was "given forced medications" by Dr. Sidaros "for coughing too loudly" and for calling Dr. Sidaros "by his first name Rafik."[11]

After two weeks, Allen's original charges were dismissed.[12] However, Dr. Sidaros ordered Allen "taken back to Whiting by ambulance" on a physician's emergency certificate.[13] Soon after Allen returned to Whiting, another inmate punched him "unprovoked" in the ear.[14] Allen was "ordered on unit restrict with constant staff observation," and not allowed to go into the yard or do activities with other patients.[15] Allen was also "unable to collect . . . clothing and other belongings his family had mailed him" while he was on unit restrict.[16]

Allen further contends that at his probate court hearing and petition for involuntary commitment, Dr. Sidaros "shared a number of factual inaccuracies," which was "reckless and

---

[5] *Id.* at 12.
[6] *Ibid.*
[7] *Id.* at 14.
[8] *Id.* at 15.
[9] *Ibid.*
[10] *Ibid.*
[11] *Id. at 16.*
[12] *Ibid.*
[13] *Ibid.*
[14] *Ibid.*
[15] *Ibid.*
[16] *Ibid.*

wanton misconduct and negligence."[17] After Dr. Sidaros had "Allen involuntarily committed to the hospital," he forced Allen to take medication even after Allen reported to Dr. Sidaros that it made him "depressed, anxious, restless, have nightmares and other sleep issues, and severe sexual side effects."[18]

After about three months at Whiting, Allen was transferred to Dutcher. There, Dr. Dreisbach continued Dr. Sidaros's medication regimen and did not discharge Allen to somewhere "more appropriate."[19] Allen remained at Dutcher for over four months, after which he was transferred to a respite house.[20]

## DISCUSSION

A court may dismiss a complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). A court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless the facts it recites are enough to state plausible grounds for subject matter jurisdiction and for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 155–56 (D. Conn. 2016).

Because Allen is proceeding *pro se*, the Court must liberally construe his complaint and interpret it to raise the strongest grounds for relief that its allegations suggest. *See Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013). Still, even a *pro se* complaint may not survive a motion to dismiss if its factual allegations do not establish at least plausible grounds for a grant of relief. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

---

[17] *Id.* at 17-18.
[18] *Id.* at 18.
[19] *Id.* at 19.
[20] *Id.* at 12.

Allen first filed his complaint in August 2020 against Dr. Sidaros and Dr. Dreisbach alleging violations of his Fourth Amendment right against unlawful seizure of person and Eighth Amendment right against cruel and unusual treatment.[21] The defendants moved to dismiss.[22] I granted the motion. *See Allen v. Sidaros*, 2022 WL 475183 (D. Conn. 2022). I found that Allen's claims based on his court-ordered involuntary commitment and administration of medications were jurisdictionally barred under the *Rooker-Feldman* doctrine. *Id.* at *4. I also found that Allen's allegations against Dr. Sidaros with respect to the physician's emergency certificate did not include sufficient facts to show "gross negligence or a clear constitutional violation as required to overcome a defense of qualified immunity." *Id.* at *6. Neither could Allen defeat Dr. Sidaros's absolute immunity from a § 1983 claim for money damages on the basis of his alleged perjury at the probate court proceedings. *Ibid.*

I also concluded that Allen could not identify any clearly established constitutional right to be designated at a particular type of mental health facility or to be treated at a facility that does not also have persons subject to criminal charges. *Ibid.* Neither did Allen allege any particular facts showing that either Dr. Sidaros or Dr. Dreisbach should have and failed to discharge him at an earlier time to support his claim of recklessness and gross negligence. *Id.* at 7. Finally, I noted that Allen did not show personal involvement by either Dr. Sidaros or Dr. Dreisbach with respect to his other deprivations, including his time on unit restrict status or the poor living conditions at Whiting. *Ibid.*

I similarly denied Allen's claim against Dr. Sidaros and Dr. Dreisbach for violating his right to the free exercise of religion. Allen alleged that he was denied the opportunity to attend Yom Kippur, Rosh Hashana, and Church services while on unit restrict at Whiting. *Id.* at *8.

---

[21] Doc. #1.
[22] Doc. #15.

While I agreed there is "no doubt that Allen retained his constitutional right to the free exercise of his religion while he was subject to involuntary commitment," I found that "Allen does not allege that either Dr. Sidaros or Dr. Dreisbach" were the ones who "ordered him to be deprived of" this right. *Ibid.*

On May 2, 2022, Allen filed an amended complaint.[23] The amended complaint names as an additional defendant the State of Connecticut.[24] But it is well settled that the Eleventh Amendment and related principles of state sovereign immunity generally divest the federal courts of jurisdiction over lawsuits by private citizens against the States, any state government entities, and any state government officials in their official capacities. *See generally Lewis v. Clarke*, 137 S. Ct. 1285, 1290–91 (2017); *T.W. v. New York State Bd. of L. Examiners*, 996 F.3d 87, 92 (2d Cir. 2021). And "it is beyond dispute that Congress's enactment of § 1983 did not abrogate Eleventh Amendment immunity from federal court lawsuits." *See Campbell v. City of Waterbury*, 585 F. Supp. 3d 194, 202 (D. Conn. 2022).

Allen's amended complaint notes that he does not "have much . . . to add factually" and would like to keep his "original statement of claim largely intact."[25] His amended complaint filing is more in the nature of a motion for reconsideration of my initial order dismissing his original complaint, and he argues against dismissal on several grounds.

First, Allen contends that the *Rooker-Feldman* doctrine is inapplicable to his case as the state court merely "improperly ratified" the doctors' judgments that he should be hospitalized and so did not issue its own "judgment."[26] But he does not cite law to contradict the conclusion in my prior ruling that the *Rooker-Feldman* doctrine may properly extend to § 1983 claims that

---

[23] Doc. #33.
[24] *Id.* at 1.
[25] *Id.* at 2.
[26] *Id.* at 2-3.

challenge enforcement of an involuntary commitment or forced medication order. *See Szabo v. Paradis*, 2018 WL 4158332, at *3 (E.D.N.Y. 2018); *Middleton v. United States*, 2012 WL 394559, at *4 (E.D.N.Y. 2012); *Spencer v. Bellevue Hosp.*, 2012 WL 1267886, at *4-5 (S.D.N.Y. 2012). The *Rooker-Feldman* doctrine bars Allen from challenging his involuntary commitment or the doctors' decision to require him to take certain medication pursuant to the order of the probate court.

Allen further argues that the doctor defendants were grossly negligent in designating him to Whiting, rather than allowing him to stay at less secure facilities such as "hospitals with psychiatric wards, halfway-houses, and Bridgeport Long-Term mental hospital."[27] But Allen still has not alleged facts to show that either Dr. Sidaros or Dr. Dreisbach "had authority to decide on a different hospital facility." *Allen*, 2022 WL 475183, at *6. And while Allen emphasizes the "criminality" of his fellow committees at Whiting, he does not contest that Whiting is a "mental hospital . . . for civil patients."[28] Neither has Allen alleged facts—as distinct from conclusory allegations—to show that the defendants acted with "very great or excessive negligence" or with "the want of, or failure to exercise, even slight or scant care or slight diligence" as is necessary to sustain a claim of gross negligence. *Riccio v. Bristol Hosp., Inc.*, 341 Conn. 772, 784 (2022).

Allen next contends that Dr. Sidaros was the one who ordered his "unjustified solitary confinement and forced medication."[29] But he does not overcome the Court's previously stated concern that "[e]ven assuming Dr. Sidaros . . . ordered Allen to a solitary confinement room, the complaint alleges no further facts to suggest how any particular incident was so unwarranted or disproportionate as to amount to a violation of Allen's constitutional rights." *Allen*, 2022 WL

---

[27] *Id.* at 6.
[28] *Id.* at 9.
[29] *Id.* at 8.

475183, at *7 n.55. Nor has Allen "clearly alleged that Dr. Sidaros independently compelled him

to be medicated without a court order to do so." *Ibid.*

Allen further faults the Court's previous dismissal of his complaint for not addressing his

inability to collect belongings delivered by his family while he was on unit restrict.[30] But Allen

does not allege that either Dr. Sidaros or Dr. Dreisbach were responsible for his deprivation

while on unit restrict.

Allen explains that with respect to his First Amendment claim, he did ask "multiple

times" to attend religious services while on unit restrict.[31] But Allen still does not specify whom

he asked about the services. Nor, again, does he allege that either Dr. Sidaros or Dr. Dreisbach

were involved in the deprivation of his right to attend such services.

Allen's amended complaint adds an allegation that "a Meriden state's attorney contacted

the Hamden Police Department to say he thought there was not probable cause for the arrest

made of plaintiff."[32] But any claims relating to his false arrest have no bearing against either Dr.

Sidaros or Dr. Dreisbach, because Allen does not contend that either doctor was involved with

his original arrest.

It is clear from Allen's multiple submissions that he believes he was subject to inhumane

treatment throughout several months of involuntary commitment. I do not doubt that the

experience for Allen was very difficult and humiliating. But what is lacking in his original

complaint and amended complaint are allegations that allow me to conclude that either Dr.

Sidaros or Dr. Dreisbach should be held personally liable for what Allen experienced.

---

[30] *Ibid.*
[31] *Ibid.*
[32] *Id.* at 13.

CONCLUSION

The additional allegations in the amended complaint do not overcome this Court's previously stated grounds for dismissal. Accordingly, the Court GRANTS the defendants' renewed motion to dismiss (Doc. #35), and the Court dismisses Allen's claims with prejudice in light of the fact that Allen still has not alleged plausible grounds for relief despite having been afforded the opportunity to file an amended complaint.

It is so ordered.

Dated at New Haven this 17th day of January 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge